**UNITED STATES of America,**
**Plaintiff,**

v.

**Juan C. PEREZ–VELAZQUEZ,**
**Defendants.**

**Criminal No. 05–324(DRD).**

United States District Court,
D. Puerto Rico.

April 27, 2007.

---

Francisco M. Dolz–Sanchez, Francisco M. Dolz Law Office, Jorge L. Armenteros–Chervoni, San Juan, PR, for Defendants.

---

1. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Scott H. Anderson, United States Attorney's Office, San Juan, PR, for Plaintiff.

### AMENDED NUNC PRO TUNC OMNIBUS ORDER APPROVING AND ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS (DOCKET ENTRIES NO. 91 AND 141), AND DENYING SUPPRESSION HEARING AND OTHER PENDING MATTERS (DOCKET NO. 117)

DOMINGUEZ, District Judge.

Pending before the Court are two Reports and Recommendations issued by the United States Magistrate Judge Vélez–Rive ("Magistrate Judge") (Docket Entries No. 91 and 141); the appeals filed by defendant Juan C. Pérez–Velázquez' ("Pérez") (Docket Entries No. 98 and 145), and the Government's opposition (Docket No. 99) to the Report and Recommendation of August 21, 2006 (Docket No. 91), as well as the *Omnibus Motion To Dismiss, Or, Alternatively To Suppress Evidence* filed on December 15, 2006 by defendant Pérez (Docket No. 117)

A. *Report and Recommendation of August 21, 2006 (Docket No. 91).*

██ On February 16, 2006, Pérez filed a *Motion To Suppress Evidence Under Franks,*[1] *Aiudi, And Knock And Announce Rule ("Motion")* (Docket No. 43), on the grounds that the sworn statements submitted by the local agent in support of the search warrant issued by the local court contained false statements, leading the local court to a faulty finding of probable cause. On May 30, 2006, the Government replied (Docket No. 61), on the grounds that (a) Pérez' motion to suppress should be denied for being filed late, and failure to comply with this Court's orders;[2]

---

2. The Government reviewed the procedural background as to the pretrial motions for

(b) Pérez' arguments are supported on Puerto Rico law which is inapplicable in federal courts; (c) Pérez' arguments failed to meet the *Franks* threshold test,[3] as the defendant has failed "to show any deliberate falsehood or reckless disregard for the truth supported by any offer of proof" nor has the defendant submitted any affidavits or sworn or reliable statements of witnesses in order to rebut the affidavit submitted by the local agent; (d) there is no requirement that the agent needs to corroborate the informant's source, as the purpose of the affidavit and the information received from the anonymous source is "to establish that there is a fair probability that contraband or evidence of a crime will be found in a particular place," *United States v. Cochrane*, 896 F.2d 635, 641 (1st Cir.1990); (e) the search warrant was directed at the apartment [and/or the automobile] where the criminal activity was [occurring], not to the person committing the offense; (f) the location where the surveillance agent was located or the vehicle being used for surveillance purposed is irrelevant; (g) Pérez alleges that the evidence seized by the local agents is illegal under Puerto Rico law, however, he fails to show how the actions of the local agents, if

undertaken by federal agents, would be illegal under the laws and the United States Constitution; (h) Pérez alleges that local agents failed to knock and announce themselves before entering defendant's apartment, in violation of the Fourth Amendment of the U.S. Constitution, based only on hearsay testimony of Pérez' neighbors; (i) local agents caught Pérez flushing narcotics, and Pérez has failed to show otherwise; (j) there has been no spoliation of evidence, as there is no proof that the surveillance camera found in Pérez' apartment was connected to a recording device,[4] (k) all the evidence seized was classified pursuant to the local agent that seized it, and it was presented to all parties for ocular inspection indicating the amount and the location where the evidence was seized; (*l*) the authentication proceeding of the evidence seized will take at trial not at the ocular inspection; and (m) Pérez was charged in the Indictment for being part of a conspiracy, "making him accountable for all the narcotics seized, regardless of the location" (Docket No. 61).

On June 29, 2006, the Court referred to the Magistrate Judge the *Motion To Suppress Evidence Under Franks, Aiudi, And*

---

easy reference to the Court: (a) the deadline established by the Court to file a motion to suppress evidence was January 16, 2007, however, Pérez filed his motion to suppress on February 16, 2007 without any explanation for his tardiness; (b) on March 28, 2006, Pérez filed a *Motion Preserving Claim Of Spoliation Of Evidence* (Docket No. 51), after the Government has informed Pérez that there is no video recording of any activity taken place in front of this apartment; (c) on April 10, 2006, the Court granted defendants ten (10) additional days to conclude plea negotiations; (d) on April 27, 2007, the Court scheduled an ocular inspection of the material seized for May 3, 2006, and granted defendants until May 15, 2006 to file dispositive motions; (d) on May 19, 2006, Pérez filed late an *Addendum To Motion To Suppress* (Docket No. 60).

3. "We hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

4. The Government argues that "spoliation of evidence means the intentional destruction of evidence. Not only has defendant failed to prove an intentional destruction of evidence, he has failed to prove the evidence even existed." (Docket No. 61).

*Knock And Announce Rule* ("Motion") (Docket No. 43) filed by Pérez; the *Addendum To Motion To Suppress Evidence Under Franks, Aiudi, And Knock And Announce Rule,* submitting the exhibits to the Motion (Docket No. 44); and the *United States of America's Omnibus Response In Opposition To All Of Defendant's Motions* (Docket No. 61).[5] *See Minutes* of June 29, 2006 (Docket No. 70). A Report and Recommendation was issued on August 21, 2006 (Docket No. 91). The Magistrate Judge recommended that Pérez' motion to suppress (Docket No. 43) be denied. The Magistrate Judge appropriately forewarned Pérez pursuant to 28 U.S.C. § 636(b)(1)(C), that any written objections to the Report and Recommendation shall be filed with the Clerk of Court within the next ten (10) days upon receipt of the Report and Recommendation. Furthermore, Pérez was advised that failure to comply with 28 U.S.C. § 636(b)(1)(C) precluded any further appellate review. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir. 1988). *See also* Local Civil District Court Rules for the District of Puerto Rico, Rule 72(d). Except, of course, that an unopposed Report and Recommendation is reviewed under the clear error doctrine. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415 (5th Cir.1996); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001) (discussing Advisory Committee Recommendation as to appropriate standard); *Garcia v. I.N.S.,* 733 F.Supp. 1554 (M.D.Pa.1990).

The record shows that Pérez opposed the Report and Recommendation on September 22, 2006 (Docket Entries No. 98 and 100), that is, after the ten (10) day period had elapsed, but with leave of Court, after the Court granted two (2) motions requesting extension of time (Docket Entries No. 92 and 95). The record also shows that several motions related to Pérez' appeal were filed tardy by the defendant and without leave of Court, to wit, an *Informative Motion Regarding Submission Of Memorandum Of Law In Support Of His Appeal Of Magistrate's Report And Recommendation Denying Suppression On the Pleadings* filed on October 3, 2006 (Docket No. 102), wherein the defendant informed the Court that a memorandum of law would be filed by October 4, 2006; and, the defendant's *Memorandum Of Law In Support Of His Appeal Of The Magistrate's Report And Recommendation Denying Suppression* (Docket No. 105) filed on October 11, 2006, instead of October 4, 2006. However, since these motions were filed after the extension of time has elapsed, and without leave of Court, they shall not be considered by the Court in its review. Local Rules are designed to be followed not to be disregarded causing unequal treatment amongst litigants, and further punishing the diligent and rewarding the non-complying parties.

Pérez alleges that the Magistrate Judge erred as follows: (a) that Pérez "could no

---

**5.** The record shows that the other co-defendants, Angel Colón–Santiago ("Colón–Santiago"); Miguel Angel García–Ríos ("García–Ríos"), and José Cedeño–Rodríguez ("Cedeño–Rodríguez") filed separate motions joining the motion to suppress evidence filed by Rivera–López (Docket entries No. 31, 32 and 45). However, the record shows that, as of this date, defendants Colón–Santiago and García–Ríos had pled guilty, and the indictment was dismissed as to former defendant Cedeño–Rodríguez. The Court also notes that, on March 28, 2006, defendant Pérez filed a *Motion Preserving Claim Of Spoliation Of Evidence* (Docket No. 51), although no specific remedy, other than the Court should "note" the content of the motion, was requested by Pérez.

longer assert that he had joined the motions of his co-defendants," as "he retains derivative standing to assert that the search and seizure conducted of his co-defendants was illegal;" (b) the Court's conclusion that "it could dispense with a hearing;" (c) "the court ascribes little value to Mr. Pérez' arguments regarding the impossibility of Agent Figueroa having seen what he says he saw;" (d) that Pérez "did not allege the statement [of Agent Figueroa] to have been made with actual falsity . . .;" and (e) that "Agent Figueroa's affidavit, absent the above-mentioned false information could stand on its own to justify [the] search and seizure" (Docket No. 98).

On September 29, 2006, the Government filed a *Motion In Opposition To Defendant's Appeal of the Magistrate's Report And Recommendation And Expansion Of Time* (Docket No. 99). The Government alleges that Pérez has no standing to move for the suppression of evidence obtained from a search of a vehicle under the name of other co-defendant, as Pérez "has absolutely no expectation of privacy in a vehicle he does not own, and did not possess at the time of the search" (Docket No. 99). The Court agrees. Pérez' argument of "derivative standing" is meritless, further constituting an undeveloped argument, as it is devoid of any legal authority.[6]

The Government also argues that Pérez' argument that purports to show that one of the local agents is corrupt, is also merit-

less as Pérez failed to meet the applicable *Franks* threshold test, as to "affiant's untruthfulness" (the alleged corrupt agent was not an affiant—he participated with eleven other agents in the **execution** of the search warrant). Docket No. 99. Pérez also alleges that the agents failed to knock and announce themselves before executing the search warrant. In support of this allegation, Pérez "offers the hearsay statement of some neighbors" (Docket No. 99). The Government raises concern as to the sufficiency and relevancy of the hearsay statements.

Lastly, the Government questions the request for a *Franks* hearing to entertain the issue of whether or not one of the local agents that executed the search warrant is corrupt. The Government further alleges that, "[a] *Franks* hearing has nothing to do with a warrant's execution, only with the veracity of the affidavit" (Docket No. 99). The Court agrees and explains in this opinion.

At the outset, the Court makes reference to the *Minutes* of December 9, 2005 (Docket No. 34), wherein the Court granted the defendants until January 16, 2006 to file the motion(s) to suppress, and specifically granted Pérez' counsel until January 16, 2006 to file the motion requesting a *Franks* hearing. The record shows that Pérez filed the motion to suppress on February 16, 2006 (Docket No. 43), that is, thirty-one (31) days after the deadline set by the Court. The record further shows that Pérez' late motion to suppress was

---

**6.** Undeveloped arguments not supported by legal authorities are deemed waived and/or abandoned. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990). In *Zannino,* the Court stated: "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to 'spell out its arguments squarely and distinctly, or else forever hold its peace.'" (Citations omitted). *See also United States v. San Juan Bay Marina,* 239 F.3d 400,

408 (1st Cir.2001) ("these sort of overbroad arguments, unsupported by specifics, amount to a waiver of the issue"). Further, the doctrine of derivative standing has been coined as "long dead," particularly in cases, as the instant case, wherein the defendant "had no protectable privacy interest at stake." (Defendant Pérez was not the owner of the Audi vehicle). *United States v. McDowell, Jr.,* 918 F.2d 1004, 1007 (1st Cir.1990).

also filed without leave of Court.[7] *See* Minutes of February 16, 2007 (Docket No. 45) ("Suppress motions by the defense were filed late. Nevertheless, the defense requested that suppress motions be held in abeyance, and requested forty-five (45) days for plea negotiations").

■ Based on the above premises, the Court reviews *de novo* the Report and Recommendation (Docket No. 91), as to the objections timely raised by Pérez, and finds that the Report and Recommendation is very thorough, well reasoned and well founded. The core of Pérez' argument is that the legality of the search warrant issued by the state court is questionable, as it was issued based on a statement of a local police officer whose statement is questionable based on the surveillance allegedly conducted. The record reviewed by the Magistrate Judge, at that stage of the proceedings, showed that Pérez failed to submit the affidavit of local Agent Wilfredo Figueroa Rivas with the motion to suppress (Docket No. 43). The Magistrate Judge found that:

> The warrant at issue was supported by an affidavit from Agent Wilfredo Figueroa Rivas, PRDP Caguas Drug Unit, as shown in the sworn statement by DEA Agent Héctor L. Cartagena that was attached to the federal complaint in this case. *However, the party moving for suppression failed to submit, for purposes of the motion to suppress, the*

> *affidavit of Agent Figueroa Rivas and, as such, arguments seeking suppression are grounded solely on contentions by defense counsel as to the content of said document.[8]* (Emphasis ours).

The Court agrees with the analysis of the Magistrate Judge, as a review of the affidavit in question is determinative when considering the falsehood of the statement, for suppression purposes, under the *Franks* threshold test. In the instant case, Pérez is questioning the truthfulness and suppression of an affidavit that he failed to submit to the Court for consideration. Nonetheless, the Magistrate Judge found that a suppression will be denied if "defendant has failed to make the requisite substantial preliminary showing that, absent false information, the affidavit contained insufficient evidence to support a finding of probable cause" (Docket No. 91).

The Magistrate Judge, after a detailed and well reasoned legal analysis, set forth the grounds why the motion to suppress should be denied for failure to meet the *Franks* threshold test. The Magistrate Judge concluded that, even assuming *arguendo* that the allegations made by Pérez were taken as true [as to facts occurring during the execution of the warrant], they are insufficient to rebut the affidavit of the local agent, under the probable cause, totality of the circumstances test, to issue a search warrant:

---

7. Indeed, the record shows that defendant's counsel filed several motions out of bounds of the time limits of this Court's orders, without leave of Court, and late within the provisions of the Federal Rules of Criminal Procedure and Local Rules of the United States District Court for the District of Puerto Rico.

8. The Court reasoned that since the threshold required under *Franks*, 438 U.S. at 171–172, 98 S.Ct. 2674, to trigger a hearing requires proof of "(1) a false statement; (2) knowingly and intentionally, or with reckless disregard for the truth was included in the warrant

affidavit, and (3) the alleged false statement is necessary to the finding of probable cause, there being no affidavit at least as to 'reckless disregard as to the truth' meaning that the affiant 'in fact entertained serious doubts as to the truth.' " *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984). Furthermore, "failure to investigate fully is not evidence of an affiant's reckless disregard for the truth." *United States v. Dale*, 991 F.2d 819, 844 (D.C.Cir.1993). The *Franks* threshold was never reached.

The proffered evidence is not deemed material for the determination of probable cause by a detached judicial officer. Probable cause for a warrant based on an affidavit exists where information in the affidavit reveals a fair probability that contraband or evidence of a crime will be found in a particular place. U.S.C.A. Constitution, Fourth Amendment. *United States v. Grant*, 218 F.3d 72, 74–76 (1st Cir.2000).

*See* Docket No. 91.

Pérez also alleges that the evidence seized and the individuals arrested were transferred to the federal authorities as a subterfuge for subverting state law, as local agents have violated the "knock and announce" doctrine. The Magistrate Judge found that "a violation of the knock and announce is no longer necessary if it would be futile, represents a threat of physical violence or evidence would be destroyed" (Docket No. 91). In this regard, the Magistrate Judge found that under *United States v. Aiudi*, 835 F.2d 943, 946 (1st Cir.1987):

> [T]he Court of Appeals for the First Circuit held that a search conducted by state police officers pursuant to an *invalid warrant* did not necessitate suppression of the evidence in federal court because a federal agent, who was at the scene at the time of the search, had authority to enter the premises without a warrant to "legally ... exactly what ... the (state) police did unlawfully." *United States v. Aiudi*, 835 F.2d at 946. *See United States v. Pratt*, 913 F.2d 982, 986 (1st Cir.1990). Defendant submits it is impossible for the *Aiudi* exception to apply to his case since federal agents had no previous knowledge of the operative conducted by state authorities and therefore could not be authorized to validate the illegal acts of the state police.

First and foremost, the state warrant in *Aiudi* was considered to be invalid or defective. Such is not the situation in the instant case since defendant Pérez Velázquez has not been able to establish the search warrant held any infirmity at state or federal level. Secondly, even if a state warrant is found in violation of state law, suppression is not warranted since admissibility of evidence in a federal prosecution is governed by federal law. Admissibility of evidence obtained during a joint federal-state investigation for use in a federal criminal trial is governed by federal law. (Citations omitted).

*See* Docket No. 91 at pages 14–15. The Court agrees. There is no evidence in the record to warrant the suppression of the evidence requested by Pérez, as the defendant failed to prove any of the allegations made in the motion to suppress by making a substantial preliminary showing of the falsehood of the affidavit, as required under the *Franks* threshold test. Furthermore, as to whether or not the testimony of the local agent is credible, or may have tainted the finding of probable cause, is a matter of credibility and/or a matter of meeting the *Franks* threshold test, which has not been met. *See also United States v. Pelletier*, 469 F.3d 194 (1st Cir.2006) (knock and announce rule).

Notwithstanding, when seeking suppression of evidence for lack of probable cause to obtain the search warrant on the grounds of a false affidavit, the defendant must make a substantial preliminary showing that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was incurred by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–156, 98 S.Ct. 2674. The Mag-

istrate Judge found that the *Franks* threshold test was not met, as Pérez "does not allege the statement to have been made with actual knowledge of its falsity," thus, "we consider only whether it was made with reckless disregard for the truth and, it was, whether it was necessary to the finding of probable cause" (Docket No. 91). As to reckless disregard for the truth, the Magistrate Judge found that:

> Defendant Pérez Velázquez failed to apply federal case law and rests the majority of his arguments on state law requirements to establish the credibility and reliability of the informant. The remaining contentions for a *Franks* hearing consist of counsel's allegations [of] the events, as described by Agent Figueroa Rivas, did not happen or it is inherently unreal that he could observed 1/8 of cocaine. Defendant Pérez Velázquez has failed to show circumstances indicating that, except for arguments of counsel since the supporting affidavit was not included, there was no probable cause for the issuance of the warrant or that it was inherently unreal for the defendant to display cocaine from the trunk of his car in broad daylight for all neighbors to see, since the apartment was but a few feet away and he could have inspected the cocaine inside the apartment or that he would go to the trunk of his car two days in a row to display something he could have put inside his pocket.

*See* Docket No. 91.

As to probable cause, the Magistrate Judge found that Pérez' arguments "as to the improbability that Agent Figueroa Rivas could have observed what he described in the state affidavit in support of the search warrant" do not warrant a *Franks* hearing, as even assuming *arguendo* that

the allegations made by Pérez were taken as true, are insufficient to rebut the affidavit of the local agent and the determination of probable cause under the totality of the circumstances test, *United States v. Syphers*, 426 F.3d 461 (1st Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2312, 164 L.Ed.2d 831 (2006). *See* Docket No. 91.

Pérez further alleges that the Court "was required to direct Mr. Armenteros to submit the actual affidavit [of Wilfredo Figueroa Rivas] to the court **before** ruling on the motion." *See* Docket No. 98. The Court disagrees. It is counsel's ethical and professional responsibility to determine the best course of action and litigation strategy to protect and defend his/her client's interest. It would be highly improper for the Court to indicate either party how to prosecute or defend a case. In the instant case, it is defendant's obligation to submit to the Court all the evidence necessary to meet the burden of proof required under the motion to suppress standard.

In sum, a review of the appeal of the Report and Recommendation of August 21, 2006 (Docket No. 98), shows that Pérez did not present any new evidence that may alter the findings made by the Magistrate Judge. The appeal constitutes a mere rehash of the same arguments made by Pérez in the motion to suppress, and fails to meet the *Franks* threshold test. The Court further finds that Pérez failed to support the factual allegations raised in the motion to suppress. The Court is mindful, for suppression of evidence purposes under *Franks,* that there are two uncontested facts, to wit, the license plate number of the Audi vehicle subject of the search warrant, where substances were, twice in September 2005 dates, allegedly extracted from the trunk by co-defendant Pérez,[9] and the description of Pérez' apart-

---

9. There is a dispute as to the illegality of the

white powdery substance transferred from the

ment wherein the extracted white powdery substances were taken by Pérez.[10] *See United States v. Pelletier,* 469 F.3d 194 (1st Cir.2006); *United States v. Materas,* 483 F.3d, 27 (1st Cir.2007) (reiterating *Franks'* threshold requirements).

For the reasons set forth above, and after a review *de novo* of the Report and Recommendation of August 21, 2006 (Docket No. 91), the Court finds no error in the findings made by the Magistrate Judge, specially because the standard to issue a search warrant is not burdensome under preponderance of evidence (mere probability of criminal activity will suffice), *United States v. Grant,* 218 F.3d 72. Hence, the Court hereby **ADOPTS** *in toto* the Report and Recommendation of the Magistrate Judge dated August 21, 2006 (Docket No. 91).[11]

Audi to the apartment.

10. Further, the police received, on the date of the initial surveillance, an anonymous tip from a male telephone caller indicating that in one of the Myrlena apartments at the Urbanization Myrlena in Caguas, an individual who is partially disabled due to a motorcycle accident, was stashing all the cocaine sold in Caguas and other nearby towns. The individual according to the tipster lived in an identified apartment and stationed his automobile grayish in color, license plate ECM–972. A surveillance was later carried on by Agent Wilfredo Figueroa Rivas, on that same date on the afternoon hours. As to the described apartment identified as B–1, first floor, the first apartment from left to right, in front of the Myrlena apartments, Urbanization Myrlena in Caguas, Puerto Rico.

That same day, Agent Wilfredo Figueroa Rivas proceeds to the Myrlena apartments to the apartment described by the tipster. The vehicle and the apartment were in plain view of Agent Wilfredo Figueroa Rivas. An individual is observed at the balcony of the searched apartment, enters the apartment and proceeds shortly thereafter to the Audi, leaving from a green color door in the interior of the building. He walks with some difficulty to the Audi, opens the trunk, looks to both sides, and extracts a large transparent plastic bag containing white compact powdery substances, then closes the trunk. The agent concludes, by his experience, that the white compact powdery substance is 1/8 of cocaine. The individual walks back to the interior of the building, and later is seen again, at the balcony of the apartment without the above described plastic bag.

On the next day, in the hours of the afternoon, the surveillance continued as to the grayish color Audi vehicle, license plate number ECM–972, and the apartment, in the same Myrlena apartment complex. There was an individual washing the sidewalk using a pressure hose. About 3:00 p.m., the alluded Audi, drove by the individual that was hosing the sidewalk. The driver of the Audi parked in front of the apartment subject of the investigation. The driver is identified as Canito Diente, a drug trafficker in the Caguas area under suspicious of several murders in the Caguas area. The agent observed that the driver was accompanied by a passenger, who was the same individual observed the day before at apartment B–1, who had extracted drugs from the Audi to the apartment subject of the surveillance. The passenger opened the trunk of the Audi and extracted a large transparent plastic bag containing white compact powdery substance that was again identified by the agent as 1/8 of cocaine. The driver and the passenger of the Audi both entered and walked to the apartment subject of the search warrant, Canito Diente was later seen at the balcony of the apartment being under surveillance.

The Court understands that the above synthesized restatement of the sworn statement of Agent Figueroa Rivas fully complies with the standards of probable cause set forth as to the issuance of a search warrant issued as to the Audi and the apartment. *See United States v. Syphers,* 426 F.3d at 464–465, requiring only a "probability, not a prima facie showing, of criminal activity" (citations omitted), specifically further not requiring "officials to possess an airtight case before taking action" (citation omitted).

11. "The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff".

Where, as here, "a [Magistrate] has produced a first-rate work product, a reviewing

**B.** *Report and Recommendation of March 1, 2007 (Docket No. 141).*

On December 15, 2006, defendant Pérez filed an *Omnibus Motion To Dismiss, Or, Alternatively To Suppress Evidence* (Docket No. 117), wherein Pérez basically makes the same arguments already entertained by the Magistrate Judge in the Report and Recommendation of August 21, 2006 (Docket No. 91), except that Pérez now moves for the dismissal of Count Six of the Indictment for facial insufficiency; includes the statement of local Agent Figueroa, and a copy of a non-authenticated document apparently issued by the local court on July 8, 2005 [12] regarding the credibility of one Agent Meléndez, who was one of the twelve participating agents in the execution of the search warrant. Both documents were originally filed in the Spanish language.

On January 16, 2007, the Court referred to the Magistrate Judge the omnibus motion to dismiss filed by Pérez (Docket No. 123). On January 19, 2007, the Government filed its opposition (Docket No. 124), on the grounds that (a) the documents submitted in the Spanish language should be stricken from the record, as they were submitted in violation of the Jones Act, 48 U.S.C. § 864; [13] (b) Pérez does not contest the fact that he possessed the weapons included in Count Six of the Indictment, notwithstanding, Pérez moved to dismiss this Count on the grounds of facial insuffi-

ciency, and lack of evidence showing that said weapons were used "in furtherance" of his drug related or trafficking activities; (c) the Government is under no obligation to turn over to defense counsel any internal memorandum regarding charging decisions made by the Government, as charging decisions, whether in writing or not, are not discoverable, as they are made within the sole discretion of the United States Attorney General and the United States Attorney for the District of Puerto Rico; (d) Pérez' request for the production of FBI 302 should be denied, as Pérez' arguments regarding this document are founded on hearsay; (e) the Government "is at a complete loss as to how an opinion written in July, 2005 [over an incident occurring in an action related to a 2004 unrelated case], can corroborate what transpired during the execution of a warrant [occurring] in September 2005" (Docket No. 124); and (f) Pérez' request to inspect the Grand Jury minutes should also be denied for lack of foundation.

On February 28, 2007, the Court entered an Order (Docket No. 138): (a) holding in abeyance the decision of the District Court on the objections filed by Pérez to the Report and Recommendation of August 21, 2006; (b) directing the Magistrate Judge to consider all the issues pending in the omnibus motion to dismiss (Docket No. 117), except whether or not the testimony

---

tribunal should hesitate to wax longiloquence simply to hear its own words resonate."
*See Lawton v. State Mut. Life Assu. Co. of Am.,* 101 F.3d 218, 220 (1st Cir.1996); and *In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993).

**12.** The Court notes that the title of the document has been sanitized.

**13.** The documents were all originally filed in the Spanish language on December 15, 2006 (Docket No. 117). The documents were duly

translated on February 20, 2007 (Docket No. 137). The Court does not consider this matter determinative since the documents had been translated at the time the Magistrate Judge decision was issued as to the omnibus motion request (Docket No. 117), and were already part of the record developed at the district court level, as opposed to submitting the translated documents for the first time to the Court of Appeals. *See Estades–Negroni v. Assocs. Corp. Of N. Am.,* 359 F.3d 1 (1st Cir.2004).

of Agent Meléndez should be suppressed; and (c) ordering Pérez to proffer to the Court within twenty (20) days, all the evidence in support of the alleged misconduct of Agent Meléndez, exclusively pertaining to the facts of this case, including but not limited to documentary evidence, photographs, videos, evidence provided by the Government in this case, and any other relevant evidence.

On March 1, 2007, the Magistrate Judge issued a Report and Recommendation (Docket No. 141), recommending the denial of the omnibus motion to dismiss filed by Pérez. The Magistrate Judge forewarned Pérez, pursuant to 28 U.S.C. § 636(b)(1)(C), and Local Civ. Rule 72(d), that any written objections to the Report and Recommendation were to be filed with the Clerk of Court within the next ten (10) days upon receipt of the Report and Recommendation, that is, by March 15, 2007 (Docket No. 141). 28 U.S.C. § 636(b)(1)(C). Furthermore, Pérez was advised that failure to comply with 28 U.S.C. § 636(b)(1)(C) precluded any further appellate review. *Henley Drilling Co. v. McGee*, 36 F.3d at 150–151; *United States v. Valencia–Copete*, 792 F.2d 4; *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d at 991.

■ The record shows that Pérez filed an appeal on March 16, 2007 at 1:02 a.m. (Docket No. 145), that is, after the ten (10) day period to appeal had elapsed, and without leave of Court. Thus, the Court finds that Pérez' appeal was filed late. "[A] party 'may' file objections within ten days or he may not, as he chooses, but he 'shall' do so if he wishes further [appellate] consideration." *Henley Drilling Co. v. McGee*, 36 F.3d at 150 (quoting *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980)). Hence, the Court needs only satisfy itself that there is no clear error on the face of the record in order to accept an untimely appeal to a Report and Recommendation. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415; *Nogueras–Cartagena v. United States*, 172 F.Supp.2d at 305; *Garcia v. I.N.S.*, 733 F.Supp. 1554.[14]

Count Six of the Indictment, *Possession Of A Firearm In Relation To A Drug Trafficking Crime (Title 18, United States Code, Section 924(c)(1)(A))*, states that Pérez "did knowingly and intentionally possess firearms, to wit: one (1) Desert Eagle .357 caliber semiautomatic pistol, and one (1) Glock–19 9mm semi-automatic pistol, during and in relation to a drug trafficking crime as defined in Title 18, United States Code, Section 924(c)(2)...." (Docket No. 17).

---

14. But even if this Court were to consider the late appeal to the Report and Recommendation, the determination would be identical under *de novo* review, the standard applicable to a timely appeal of a Report and Recommendation. Our conclusion would not be altered as the attack under scrutiny is federal in nature and constitutes a facial attack on Count VI of the Indictment. Further, the challenge as to the surveillance and the search warrant includes the affidavit of Agent Figueroa. The Court, notwithstanding, finds these objections legally insufficient for the reasons stated in this Order. However, the Court must conclude that the filing is not timely since the ten (10) day period to object to a Report and Recommendation has been compared to the ten (10) day period under Fed.R.Civ.P. 59(e) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). *See Negron v. Celebrity Cruises, Inc.*, 316 F.3d 60, 62 (1st Cir.2003). But Rule 59(e) motions do not enjoy the three (3) day mailing rule extension provided by Fed.R.Civ.P. 6(e). *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, 1998 WL 719573 (N.D.Ill. Oct.8, 1998) (containing a compilation of circuit court cases holding that the mailbox rule granting a three (3) day extension, Fed.R.Civ.P. 6(e), does not apply to motions under Fed.R.Civ.P. 59(e)).

■ As correctly found by the Magistrate Judge, the execution of the search warrant resulted, amongst others, on the seizure of the firearms charged in Count Six of the Indictment. The request for the issuance of the search warrant is supported by the affiant local Agent Figueroa. Pérez unsupported allegations are insufficient to request the dismissal of Count Six of the Indictment for facial insufficiency. The Court explains.

The request for dismissal of Count Six is based on Pérez' own arguments and how he purports the charges to be interpreted, as opposed as to what indeed the charges state. The Court disagrees with defendant's arguments, particularly, when the possession of the firearms described in Count Six of the Indictment has not been contested by Pérez. The fact that Pérez volunteered or not the information as to the location of the weapons to the agents that were executing the search warrant, does not change the fact that certain firearms were found in Pérez premises.

Pérez also questions the findings made by the agents executing the search warrant, omitting the critical fact that white powdery substance was removed from the trunk of the Audi on two separate occasions and taken into the searched apartment. However, probable cause is supported by the totality of the circumstances test, i.e. the two day surveillance of the apartment, the drug activity surrounding the Audi, the white powdery substance extracted from the Audi's trunk by Pérez, subsequently entering the apartment under surveillance, the presence of a known drug trafficker, called "Canito Diente" driving the Audi on the second day of the surveillance, Pérez driving in the Audi driven by Canito Diente, and entering the apartment accompanied by Pérez carrying drugs extracted again from the trunk of the Audi, in addition to the drugs and drug paraphernalia that were found on the searched apartment where Pérez resided and in the Audi car where Pérez traveled at least one time. There is nothing illegal in finding, pursuant to a search warrant, crack cocaine, cocaine, related drugs to the cocaine being taken into the apartment wherein drugs were entered a few days earlier. Nor is unrelated and/or extraordinary the finding of drug paraphernalia and the presence of drugs.[15] The issue, however, presented to impeach the evidence found constitutes a credibility issue. As stated above, all the factual disputes and credibility issues are to be submitted to the jury. The Court finds, however, based on preponderance of evidence, that the drugs, the drug paraphernalia and the weapons seized are not to be suppressed.

The Court agrees with the finding made by the Magistrate Judge denying Pérez' request to review the Grand Jury Minutes,

---

15. As stated by Agent Cartagena in his sworn statement of September 10, 2005:

11. . . . During the search, Agents found the following materials inside the apartment; miscellaneous drug paraphernalia (digital scales, baking soda, strainers, tin foil rolls, approximately 6270 empty plastic vials, numerous clear plastic baggies, heat sealer, etc), cell phones, money and two guns (Desert Eagle .357 caliber pistol and Glock 19 9mm pistol). The Desert Eagle pistol had a defaced serial number.

12. The following drugs were seized inside PEREZ–VELAZQUEZ's apartment: approximately 3 kilograms of crack cocaine, approximately 50 grams of powder cocaine, approximately 35 grams of heroin and two bottles of Xylazine (a horse anesthetic).

13. Agents seized approximately 545 grams of crack cocaine contained on numerous plastic vials inside the Pathfinder. Agents seized approximately 5 vials of crack cocaine inside the Audi.

14. Agents conducted field tests of the crack cocaine and heroin and received positive indications for the presence of cocaine and heroin.

See Complaint (Docket No. 1).

on the grounds of secrecy of the Grand Jury proceedings, and the fact that none of the concerns argued by Pérez were submitted to the Grand Jury, such as the location where the weapons were found.

As to the facial attack on Count Six of the Indictment, that is, whether or not the United States possess evidence to satisfy all the elements of the crime, i.e. possession of firearms during and in relation to a drug crime is a matter that is best left for a Rule 29 motion under the Federal Rules of Criminal Procedure. In sum, the issue of whether or not the United States possesses sufficient evidence to prove that Pérez incurred in drug transactions (using the drugs from the Audi, the drugs found in the apartment, or stashed elsewhere, or using other drugs) with the weapons found in his apartment, is a separate matter from whether or not the charge is facially insufficient.

For the reasons set forth above, the Court finds no clear error in the findings made by the Magistrate Judge. Hence, the Court hereby **ADOPTS** *in toto* the Report and Recommendation of the Magistrate Judge dated March 1, 2007 (Docket No. 141).

C. *The suppression of evidence obtained by one Agent Meléndez.*

█ Pérez alleges that any evidence obtained by one Agent Meléndez during the execution of the search warrant should be suppressed on the ground that the agent is corrupt. The Court disagrees.

In *United States v. Materas*, 483 F.3d, 27 (1st Cir.2007), the Court held:

> Under *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant may request an evidentiary hearing to challenge police misconduct in drafting an affidavit in support of a search warrant. **The defendant "must make a 'substantial preliminary showing' that the affidavit included a false statement, which was made either knowingly and intentionally or with reckless disregard for the truth, and that this misstatement was necessary to the finding of probable cause."** *United States v. Nelson–Rodríguez*, 319 F.3d 12, 34 (1st Cir.2003) (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674). (Emphasis ours).

The standard followed by the Court in *Materas* as set forth in the *Franks* test is clear. A review of the record shows that Pérez' arguments are devoid of any supporting evidence that may warrant the suppression of evidence. Moreover, the Court finds that Pérez' own statement is self-serving, undated, and fails to meet the standard under *Franks*, as it fails to make a preliminary showing that the affidavit used for the basis to issue the search warrant included a false statement, or that it was made knowingly and intentionally or with reckless disregard for the truth, and that the agent's misstatement was necessary to the finding of probable cause. The Court finds that there is no connecting evidence between Pérez' argument and the supporting evidence included with the omnibus motion to dismiss. Pérez alleges, in the alternative, that one of the twelve agents that participated in the execution of the search warrant is corrupt, and hence, the existence should be suppressed on other grounds independent from the *Franks* deficiency. In support of this allegation, Pérez submitted a copy of a non-authenticated document purporting to show that the Court did not provide credibility to an Agent Meléndez by referring to a 2004 incident, unrelated to the instant case, involving credibility issues. *See* Exhibit No. 3, of the omnibus motion to dismiss, a document dated July 8, 2005. As stated above, factual disputes and credibility issues are to be submitted to the jury.

For the reasons set forth herein, the Court finds that Pérez failed to show, using preponderance of evidence standards that local Agent Meléndez is corrupt altering the probable cause based on the totality of the circumstances; that his role in the execution of the search warrant may have tainted the finding of probable cause, or that the evidence seized may be suppressed (Meléndez was one of the twelve agents executing the search warrant). The issuance of the search warrant under *Franks* is not affected since Agent Meléndez is not an affiant related to the sworn statements used as a basis for the search warrant under *Franks*. Meléndez participated at the execution of the search warrant but is not as an affiant as to the issuance of the search warrant. Thus, based upon the evidence before the Court, at this stage of the proceedings, a *Franks* hearing is not warranted, and the suppression of evidence is inappropriate as it only involves a credibility issue, as to one of the twelve agents participating in the execution of the search warrant, that at most shows that he may be corrupt, in an unrelated case. Whether these facts are sufficient to cause the jury not to consider all the drug evidence found in the apartment of Pérez is an issue of credibility.

Suppression based on preponderance of evidence dictates that the evidence is not to be suppressed as most of the evidence and the circumstantial evidence points to the conclusion, that the apartment at Myrlena apartments, wherein Pérez resided was used as a nerve center to stash and distribute cocaine, crack cocaine and heroin.

### D. Proffer of evidence as to alleged agent's misconduct.

On February 28, 2007, the Court issued an Order (Docket No. 138), granting the defendant Pérez twenty (20) days to proffer all the evidence in support of the alleged misconduct of Agent Meléndez, exclusively pertaining to the facts of this case, including but not limited to documentary evidence, photographs, videos, evidence provided by the Government in this case, and any other relevant evidence.[16] On March 20, 2007, Pérez filed a response in compliance with this Court's Order (Docket No. 146). The Court hereby notes defendant's compliance with the Order of February 28, 2007 (Docket No. 138).

### E. Recapitulation of the case.

The Court deems necessary to recapitulate all the above findings in order to focus and narrow the issues which the Court is now facing. The gist of Pérez' omnibus motion to dismiss (Docket No. 117) is to dismiss the indictment, or in the alternative to allow a suppression hearing under *Franks* in order to suppress the evidence

---

**16.** Prior thereto, the Court had granted the defendant ten (10) days to produce all the evidence "regarding the alleged misconduct of the agent that participated in the search and seizure of the evidence subject of the suppression hearing" (Docket No. 115). Pérez did not respond to this Court's Order. On February 28, 2007, the Court graciously allowed Pérez a new period of twenty (20) days to proffer all the evidence in support of the alleged misconduct of Agent Meléndez (Docket No. 138). On March 15, 2007, Pérez' counsel replied to this Court's Order of February 28, 2007, and declined this Court's invitation (Docket No. 144). The first invitation to produce evidence was generic requesting **all proof that may constitute misconduct as to Meléndez;** the second invitation was misconduct limited **to the facts of the case.** The Court understands that both invitations have been declined except for the state court's resolution of the July 8, 2005 document, and defendant's sworn statement dated December ____, 2006 included with defendant's omnibus motion to dismiss (Docket No. 117). The Court respects and accepts defendant's strategy. The Court notes that Pérez' sworn statement is undated.

seized by local Agent Meléndez, who is allegedly a corrupt agent, and the probable cause determination based upon Agent Figueroa's statement.

As to *Franks*, the challenge constitutes alleged prior misconduct of Agent Meléndez based on credibility findings made by a local state judge all of which occurred in a separate case in the year 2004. This particular agent was not the agent who provided the sworn statement that triggered probable cause for the search warrant. Further, the agent in question (Meléndez) was one of twelve (12) agents that allegedly participated in the execution of the search warrant pursuant to the defendant's own statement. Agent Meléndez' conduct is clearly beyond the scope of *Franks*, as said case is limited to the statements that are "deliberately [false] or in reckless disregard for the truth," that are the basis for the probable cause to issue a search warrant, and not the afterward conduct in the execution of said warrant. Defendant also alleges that Agent Figueroa Rivas could not have seen the drugs and the color of the car is not grey but blue. The last is a credibility issue which the Court leaves for the jury.

As to the motion to suppress, based on other than *Franks* grounds, defendant seeks to suppress the evidence gathered from the execution of the search warrant based on facts which constitutes purely credibility issues. Defendant attacks the credibility of Agent Figueroa, as he was too distant from the location of the Audi car to be able to see the defendant on two different dates and engaging in different activities. In one occasion, Pérez was seen taking drugs from the trunk of the Audi car to his apartment. In a second occasion and on a separate date, Pérez was seen arriving in the same Audi car as a passenger driven by one called Canito Diente, a known drug trafficker, and Pérez removing again from the trunk of the car the drugs and taking them to his apartment. The defendant attacks the credibility of Agent Figueroa based on the alleged distance between the agent and the Audi car, based on the color of the car, and as to the last surveillance, based on the hour that the Audi car arrived. The license plate of the Audi car is not attacked and neither is the description of the defendant nor his apartment. The Court notes that the search warrant is addressed to the Audi car with specific license plate number, and to an apartment specifically described, wherein the license plate, the apartment address and description are not attacked. The Court understands that the totality of circumstances test, *United States v. Syphers*, 426 F.3d 461, favor not to suppress, since from a distance a grayish car may seem blueish in nature. The hour controversy as to the washing of the sidewalk, as to the last surveillance, is also a matter which is subject to credibility.[17]

The standard for probable cause to issue a search warrant are not burdensome, it merely "requires a probability, not a prima facie showing, of criminal activity." *See United States v. Syphers*, 426 F.3d at 464–465. In *Syphers*, the Court held:

> Probable cause for a warrant based on an affidavit "exists where information in the affidavit reveals a 'fair probability that contraband or evidence of a crime will be found in a particular place.' 'Probability is the touchstone' of this inquiry." *United States v. Baldyga*, 233 F.3d 674, 683 (1st Cir.2000) (quoting

---

**17.** Defendant also alleges that he had within his residence a security camera that provided video of the incident, the defendant alleges evidence spoliation. The police alleges that there was no tape in the camera and none was seized. Again, the matter is one of credibility.

*United States v. Khounsavanh,* 113 F.3d 279, 283 (1st Cir.1997)). Thus, "the standard of probable cause **requires a probability, not a prima facie showing, of criminal activity.**" *United States v. Burke,* 999 F.2d 596, 599 (1st Cir.1993); *see also United States v. De-Quasie,* 373 F.3d 509, 518 (4th Cir.2004) ("The **probable cause standard does not require officials to possess and airtight case before taking action.**") (internal quotations and citation omitted).

. . .

The standard applied in determining the sufficiency of an affidavit is a "totality of the circumstances" test. *United States v. Garcia,* 983 F.2d 1160, 1167 (1st Cir. 1993) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). (Emphasis supplied).

Hence, the Court shall not overturn issuance of the search warrant as not complying with the probable cause standard. The Court finds that the standard for suppression of the evidence seized is also one of probable cause. The findings of drug paraphernalia and drugs within the apartment ordered searched considering the two day fact pattern of the surveillance observed by Agent Figueroa on September 6 and 7, 2005, clearly are within the parameters of probable cause. The Court further finds that, regardless of the standard of review used, that is, clear error or *de novo,* the result is the same because the threshold as to the issuance of the search warrant, is the " 'objective standard' wherein the 'government need not show the quantum of proof necessary to convict.' " *United States v. Figueroa,* 818 F.2d 1020, 1023, 1024 (1st Cir.1987). The Court, therefore, finds probable cause in the issuance of the search warrant, and also finds probable cause, as to the seizure of the drugs, drug paraphernalia, and the weapons found in the apartment ordered searched; hence, the evidence is not to be suppressed.

### *Conclusion*

In view of the foregoing, the Court hereby orders as follows:

1. The Court hereby adopts *in toto* the Report and Recommendation of August 21, 2006 (Docket No. 91), denying the motion to suppress filed by defendant Pérez (Docket No. 43).

2. The Court hereby adopts *in toto* the Report and Recommendation of March 1, 2007 (Docket No. 141), denying the omnibus motion to dismiss filed by defendant Pérez (Docket No. 117).

3. The Omnibus Motion To Dismiss, Or Alternatively To Suppress Evidence (Docket No. 117) is denied.

4. Defendant Pérez' response in compliance with this Court's Order (Docket No. 146) is noted.

5. This case is set for a Pretrial Conference on **June 14, 2007 at 9:00 a.m.**

6. **Trial is hereby scheduled for June 18, 2007 at 9:30 a.m.**

7. Jury instructions shall be filed by **June 12, 2007.**

8. Jencks' material shall be provided by **June 15, 2007.**

9. The cut-off date to file a motion for change of plea is **June 1, 2007.** If a motion for change of plea is not filed, the three (3) point credit for acceptance of responsibility will not be granted. The Court may grant the three (3) point credit or lesser credit depending on defendant's timely submittal of a change of plea motion.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

Defendant Juan Carlos Pérez Velázquez (hereinafter "Pérez Velázquez") filed a "Motion to Suppress under *Franks* and Other Matters" claiming the affidavit in support of the search warrant contained false statements without which no probable cause would have been found by the state court judge. **(Docket No. 43)**. A Supplemental Motion was filed including attachments of photographs and a blueprint to support claims on the initial motion to suppress. **(Docket No. 44)**. Co-defendant José Luis González Rivera, who had joined the motion, already pled guilty **(Docket Nos. 76, 88)**. Co-defendant Agustín Meléndez Rivera's motion to suppress was disposed upon having entered a change of plea upon waiver of Indictment in Criminal No. 06–218(DRD) **(Docket No. 38)**. Thus, defendant Pérez Velázquez reference to joining other co-defendants' motions to suppress is not appropriate. Additionally, the search as to these co-defendants evolves from a stop of a vehicle and not from the search of Pérez Velázquez' apartment, for which any argument on the illegality of the search falls on a different factual basis and legal grounds.

On July 11, 2006, defendant Pérez Velázquez sought continuance of the suppression hearing **(Docket Nos. 73, 81, 85)**, which had been referred to this Magistrate Judge on June 29, 2006 **(Docket No. 70)**. On August 11, 2006, defendant Pérez Velázquez requested the Motion to Suppress be entertained since plea negotiations seemed fruitless **(Docket No. 89)**.

The government filed its Opposition to the Motion to Suppress contending defendant's motion failed to comply with Rule 12(e) as to the Court's deadlines to file motions. However, the Court referred the issue to this Magistrate Judge, without availing itself of the opportunity of denying same for having violated its prior imposed deadlines. Accordingly, it is now proper to entertain the merits of defendant's petition.

· Upon examination of all issues raised and the documents on the record, this Magistrate Judge finds there is no need for an evidentiary hearing since defendant Pérez Velázquez has failed to satisfy the burden to be entitled to a *Franks'* hearing and his remaining legal contentions, as discussed below, lack merit.

### GENERAL BACKGROUND

Defendant Pérez Velázquez stands charged, together with other co-defendants, in a conspiracy to possess with intent to distribute on September 8, 2005, over fifty (50) grams or more of cocaine base (Count One). Defendant Pérez Velázquez is also charged with possession with intent to distribute approximately three (3) kilograms of cocaine base (Count Two); possession with intent to distribute over fifty (50) grams or more of cocaine (Count Three); possession with intent to distribute a mixture or substance containing a detectable amount of heroin, approximately thirty five (35) grams of heroin (Count Four); possession of a firearm with obliterated serial number (Count Five); possession of firearm in relation to a drug trafficking crime, a violation of 18 U.S.C. § 924(c); and together with other defendants, aiding and abetting each other, possession with intent to distribute a detectable amount of cocaine base, approximately five hundred forty-five (545) grams of cocaine base (Count Seven).

The warrant at issue was supported by an affidavit from Agent Wilfredo Figueroa

Rivas, PRPD Caguas Drug Unit, as shown in the sworn statement by DEA Agent Héctor L. Cartagena that was attached to the federal complaint in this case. However, the party moving for suppression failed to submit, for purposes of the motion to suppress, the affidavit of Agent Figueroa Rivas and, as such, arguments seeking suppression are grounded solely on contentions by defense counsel as to the content of said document.

## LEGAL DISCUSSION

Defendant Pérez Velázquez submits his summary as to the content of Agent Wilfredo Figueroa Rivas' affidavit in support of the search warrant. The attachments to the Addendum to the Motion to Suppress refer to photographs of the site and a blueprint sketch of the location with defense counsel's version of what might have been observed, contrary to Agent Figueroa Rivas' sworn statement before a state court judge, the color of an Audi vehicle, and a one paragraph illegible letter as to counsel's proffer of testimony from the Homeowners' Association President, that the day of defendant's arrest there was a strange car with tinted windows on the other side of the apartment from where counsel concludes the agent could not have observed the site object of the surveillance and subsequently subject of the search. As to these attachments, it is also alleged, the color of an Audi vehicle should be gray instead of blue and from the inspection of the structural plans or blueprint included with the addendum there was no field of vision for the agent to view what he described in the affidavit. Additionally, it is proffered the reference in the affidavit to an individual cleaning the area with a pressure hose would be impeached by reference to a proffer that said cleaning did not take place in the afternoon hours, but in the morning, as a maintenance worker in the building would

assert. This approach to defeat a sworn statement considered by a state court judge in the issuance of a search warrant for defendant Pérez Velázquez' property is at the most disingenuous.

A summary of the events states that on September 6, 2005, Agent Wilfredo Figueroa Rivas, received a call from an anonymous caller informing about a person who stored large amounts of cocaine in his house at Myrlena Apartment Complex in Myrlena Development in the area of Caguas. The tipster described an individual who was handicapped because of a motorcycle accident. Upon Agent Figueroa Rivas' question of where this individual lived, the anonymous caller stated that the individual lived on the first floor in front of the parking of a grey Audi with license tag ESM–972. Agent Figueroa Rivas left the premises of the Caguas Drug Unit and went in an unmarked car and with a radio towards the Myrlena Apartments. He verified the Audi was parked at the parking space of an apartment corroborating the information provided by the anonymous informant. Around 3:45 p.m., Agent Figueroa Rivas noticed an individual, who had difficulty walking, getting out to the apartment balcony, looking toward the Audi vehicle and then getting out towards the car. Agent Figueroa Rivas informed he saw the individual go to car's trunk and get out a clear plastic bag, which in the agent's experience contained what seemed about an 1/8 of cocaine. He stopped the surveillance for that day. Agent Figueroa Rivas returned to the same place the following day in the afternoon, September 7, 2005, for surveillance. A man was cleaning the sidewalk with a pressure hose. Around 3:00 p.m., Agent Figueroa Rivas saw the grey Audi arrive with two occupants. One of the persons was described as the individual he had seen on the previous day, who had difficulty walking, and

another co-defendant he recognized, who was driving the vehicle. The handicapped individual got out of the car, went to the trunk of the Audi and took out a plastic bag, which from his experience was seen as 1/8 of cocaine. Agent Figueroa Rivas observed both individuals entering the apartment and, at that point, stated having no doubt the apartment was being used as storage for controlled substance.[1]

On September 8, 2005, Agent Figueroa Rivas requested and was issued a warrant by a state court judge, District of Caguas, Hon. Suzette Marquez Valedón, which was executed that same day with other members of the Caguas Drug Unit. Upon arresting the participating individuals, an inventory of the contraband was made and custody of the individuals was transferred to federal authorities.

On the above summarized evidence, defendant Pérez Velázquez seeks suppression of the evidence for lack of probable cause to obtain the warrant because of untruthful facts and omissions; for transfer of defendants to federal jurisdiction as a subterfuge for subverting state law; and violation of the knock and announce doctrine. As such, defendant Pérez Velázquez seeks a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to suppress the evidence seized.

A defendant must be able to clear the reckless disregard hurdle to be entitled to a hearing. A hearing will be denied if defendant has failed to make the requisite substantial preliminary showing that, absent the false information, the affidavit contained insufficient evidence to support a finding of probable cause. *Franks v.*

*Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See United States v. Ranney*, 298 F.3d 74, 78 (1st Cir.2002).

A *Franks* hearing is warranted where the defendant makes a "substantial preliminary showing" that (1) a false statement,(2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause. *See Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667. Because defendant Pérez Velázquez does not allege the statement to have been made with actual knowledge of its falsity, we consider only whether it was made with reckless disregard for the truth and, if it was, whether it was necessary to the finding of probable cause. *United States v. Adams*, 305 F.3d 30 (1st Cir. 2002).

### 1. Reckless Disregard for the Truth.

■ To prove reckless disregard for the truth, the defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations. *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984) (agreeing with *United States v. Davis*, 617 F.2d 677, 694 (D.C.Cir.1979) (holding that the First Amendment definition should be applied by analogy in the *Franks* setting)); *see also Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir.1994) (same). Recklessness may be inferred "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Williams*, 737 F.2d at 602.

---

**1.** *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (An anonymous tip suitably corroborated would exhibit sufficient indicia of reliability to support probable cause and even reasonable suspicion); *Alabama v.*

*White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (Police observations showed informant accurately predicted the events observed by the agent).

▇ Defendant Pérez Velázquez failed to apply federal case law and rests the majority of his arguments on state law requirements to establish the credibility and reliability of the informant. The remaining contentions for a *Franks* hearing consist of counsel's allegations the events, as described by Agent Figueroa Rivas, did not happen or it is inherently unreal that he could observed 1/8 of cocaine. Defendant Pérez Velázquez has failed to show circumstances indicating that, except for arguments of counsel since the supporting affidavit was not included, there was no probable cause for the issuance of the warrant or that it was inherently unreal for the defendant to display cocaine from the trunk of his car in broad daylight for all neighbors to see, since the apartment was but a few feet away and he could have inspected the cocaine inside the apartment or that he would go to the trunk of his car two days in a row to display something he could have put inside his pocket. On this allegation of unsound behavior from defendant, defense counsel attempts to defy there was no way the agent could have observed defendant's actions from his vantage point.[2] Under the above described circumstances, the affidavit summary as referred by defense counsel's arguments does not amount to reckless disregard that must be established for a *Franks* hearing. *See United States v. Dale*, 991 F.2d 819, 844 (D.C.Cir.1993) ("failure to investigate fully is not evidence of an affiant's reckless disregard for the truth.").

## 2. Probable Cause Standard.

A material omission of information may also trigger a *Franks* hearing. *See United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir.1990). Therefore, one must consider whether defendant has made "a substantial preliminary showing" that the omissions he identifies were "made knowingly and intentionally" or "with reckless disregard for the truth" and whether the omissions were "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674.

Defendant Pérez Velázquez also failed to make the requisite substantial preliminary showing that, absent the alleged false information, the affidavit contained insufficient evidence to support a finding of probable cause under the *Franks* rationale. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674. Courts have noted an important difference between the "necessary" inquiries when the challenge is to the omission of an allegedly material fact rather than to the inclusion of an allegedly false material statement. With an omission, the inquiry is whether its inclusion in an affidavit would have led to a negative finding by the magistrate on probable cause. If a false statement is in the affidavit, the inquiry is whether its inclusion was necessary for a

---

**2.** Even under state doctrine that serves as predicate for counsel's arguments, when determining probable cause for issuing a search warrant, it need not be established that the alleged offense was actually committed. It shall suffice to see whether the affiant had reasonable grounds to believe that a violation of the law was committed in the place to be searched, and whether the apparent facts mentioned in the sworn statement, are of such nature so as to make a reasonable and prudent person believe that the alleged crime was committed. *See Pueblo v. Tribunal Supe-* *rior*, 102 D.P.R. 524, 527 (1974); *People v. Bogard*, 100 P.R.R. 564, 568 (1972); *People v. Superior Court*, 91 P.R.R. 19 (1964); *see also Pueblo v. Bonilla Rivera*, 1987 WL 448255 (P.R.), 19 P.R. Offic. Trans. 794, 798 (1987). Still, the Court of Appeals for the First Circuit has consistently held that federal law governs federal prosecution in federal court and violation of state law would not preclude admissibility of evidence in federal courts. *United States v. Sutherland*, 929 F.2d 765 (1st Cir. 1991); *United States v. Quiñones*, 758 F.2d 40 (1st Cir.1985).

positive finding by the magistrate on probable cause.

Probable cause to search a home exists so long as the underlying affidavit contains information showing a fair probability that evidence of a crime would be found there. U.S.C.A. Const.Amend. 4. *See United States v. Grant,* 218 F.3d 72, 74–76 (1st Cir.2000); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see United States v. Khounsavanh,* 113 F.3d 279, 283 (1st Cir.1997); *United States v. Procopio,* 88 F.3d 21, 25 (1st Cir.1996). "[P]robable cause need not be tantamount to proof beyond a reasonable doubt.... Probability is the touchstone." *Khounsavanh,* 113 F.3d at 283 (quoting *United States v. Aguirre,* 839 F.2d 854, 857 (1st Cir.1988)). The probable cause standard does not require any showing that an officer's belief that evidence will be found in the searched premises "be correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

■ An affidavit submitted in support of a search warrant application is presumed valid, see *Franks,* 438 U.S. at 171, 98 S.Ct. 2674; *United States v. Spinosa,* 982 F.2d 620, 626 (1st Cir.1992) (quoting *Franks* ), but that presumption may be surmounted by a showing that it contains either (1) a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth," *Franks,* 438 U.S. at 155, 98 S.Ct. 2674, or (2) "technically accurate statements" that "have been rendered misleading by material omissions." *United States v. Scalia,* 993 F.2d 984, 987 (1st Cir.1993).

Succinctly, to mandate an evidentiary hearing, a defendant must submit more than conclusory averments and be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Defendant should point out specifically the portion of the warrant affidavit that is claimed to be false; and should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence, satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. Otherwise, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to a hearing. *Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85. Still, material omissions may also be the basis for a *Franks* hearing. *See United States v. Paradis,* 802 F.2d 553, 558 (1st Cir.1986) (allegedly false statements made in affidavit in support of search warrant were not necessary to finding of probable cause and, thus, defendant was not entitled to hearing challenging truthfulness of the statements); *see also United States v. Rumney,* 867 F.2d 714, 720 (1st Cir.1989).[3]

Defendant Pérez Velázquez states arguments as to the improbability that Agent

---

**3.** A district court's determination that a defendant has not made the requisite showing warranting further exploration will be upheld unless clearly erroneous. *See United States v.* *Southard,* 700 F.2d 1, 10 (1st Cir.1983) (citing *United States v. Cruz,* 594 F.2d 268, 272 (1st Cir.1979)).

Figueroa Rivas could have observed what he described in the state affidavit in support of the search warrant.

Defendant Pérez Velázquez proffers information in reference to a man cleaning the sidewalk with a pressure hose on September 7, 2005, at the apartment complex premises. Defendant avers that maintenance worker Anibal Ortiz would be able to testify that he did not observe the execution of the search warrant because he only works in the morning and he did not pass a pressure hose that day. This argument is furthered to impeach what counsel considers the only detail provided by Agent Figueroa Rivas that would make his testimony out of its stereotyped form.

Defendant also submits the Audi vehicle described in the affidavit as gray, on his visual inspection and upon a black and white photograph attached to the addendum should be considered to be blue.

It is also claimed that Agent Figueroa Rivas' material omission in providing no particularized description of the white young man he observed coming out from the apartment, except that he lacked adequate mobility or was handicapped, and no mention of the leg bracelet because of his medical condition proves the falsity of his statement.

We note shades of color, grey, bluish, steel blue, steel gray, may depend on the light and distance, as much as on the eyes and perception of the beholder, and cannot be conclusively categorized as amounting to blatant falsity that tarnishes probable cause determination. On mere convenience, defendant Pérez Velázquez makes no argument on the accuracy of the license plate number of the Audi, that was described by the anonymous source and verified by Agent Figueroa Rivas' personal observations at the address as ESM–972.

Even if we were to take as true the above points mentioned by the defense, they are not material to the determination of probable cause in this case. In other words, if we were to set aside this alleged false assertions, there would still be enough content in the affidavit to support a finding of probable cause. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."); *United States v. Grant,* 218 F.3d at 77. Moreover, even in the presence of any misstatements that are knowingly false or reckless same are not considered material and, thus, not affecting the probable cause determination by a detached state court magistrate. *See United States v. Vanness,* 85 F.3d 661, 662–63 (D.C.Cir.1996) (warrant valid under *Leon* [4] because false statement not material).

In sum, even taking as truth and without holding an evidentiary hearing to determine such an inconsequential factual dispute, the proffered evidence is not deemed material for the determination of probable cause by a detached judicial officer. Probable cause for a warrant based on an affidavit exists where information in the affidavit reveals a fair probability that contraband or evidence of a crime will be found in a particular place. U.S.C.A. Const.Amend. 4. The standard applied in determining the sufficiency of a search warrant affidavit is a totality of the circumstances test. *See United States v. Syphers,* 426 F.3d 461 (1st Cir.2005).

Even under the summarized events of Agent Figueroa Rivas' affidavit referred to by defendant Pérez Velázquez' request to

---

**4.** *United States v. Leon,* 468 U.S. 897, 908, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

suppress, there would be probable cause for the issuance of a search warrant and any violation of state law as claimed, such as the alleged requirement that to conduct surveillance on horizontal property buildings the agents first need to receive permission of the Board of Residents, *quare*, has no bearing.

Although any discrepancy on the descriptions of events might be useful for impeachment of trial testimony, disregarding same would have no bearing on the probable cause determination made by a detached judicial officer in issuing the search warrant for purposes of a motion to suppress.

### 3. Lack of Merit of other Grounds to Suppress.

Defendant Pérez Velázquez proffers, in support of his motion to suppress, the failure of the law enforcement agents to knock and announce before entering the apartment to execute the warrant, based on a proffer to this fact from an upstairs neighbor stating such a claim. The government's reply denied the event transpired as alleged and claims that, to the contrary, the agents in fact knocked and announced their presence before entering, defendant failed to respond, they entered through the back of the apartment and apprehended defendant while attempting to flush narcotics down the toilet.

The issue as argued by defendant Pérez Velázquez is inconsequential since as recently as June of 2006, the Highest Court ruled in *Hudson v. Michigan*, —— U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) that a violation of the knock and announce doctrine would not require suppression of evidence. Knock and announce is no longer necessary if it would be futile, repre-

sents a threat of physical violence or evidence would be destroyed.

Arguments for suppression are also grounded in *United States v. Aiudi*, 835 F.2d 943 (1st Cir.1987). In Aiudi, the Court of Appeals for the First Circuit held that a search conducted by state police officers pursuant to an *invalid warrant* did not necessitate suppression of the evidence in federal court because a federal agent, who was at the scene at the time of the search, had authority to enter the premises without a warrant to do "legally . . . exactly what . . . the (state) police did unlawfully." *United States v. Aiudi*, 835 F.2d at 946. *See United States v. Pratt*, 913 F.2d 982, 986 (1st Cir.1990). Defendant submits it is impossible for the *Aiudi* exception to apply to his case since federal agents had no previous knowledge of the operative conducted by state authorities and therefore could not be authorized to validate the illegal acts of the state police.

██ First and foremost, the state warrant in Aiudi was considered to be invalid or defective. Such is not the situation in the instant case since defendant Pérez Velázquez has not been able to establish the search warrant held any infirmity at state or federal level. Secondly, even if a state warrant is found in violation of state law, suppression is not warranted since admissibility of evidence in a federal prosecution is governed by federal law. Admissibility of evidence obtained during a joint federal-state investigation for use in a federal criminal trial is governed by federal law. *Cf. United States v. Jarabek*, 726 F.2d 889, 900 (1st Cir.1984) (federal courts must be careful not to sanction intentional unlawful conduct by law enforcement officers); *see also United States v. Pratt*, 913 F.2d 982, 987 (1st Cir.1990).[5] Pursuant to above

---

**5.** *But see United States v. Sutherland* 929 F.2d at 770 ("the language in note 10 of *Jarabek*

implies only that in an extreme case of flagrant abuse of the law by state officials,

discussed, defendant Pérez Velázquez' arguments under Aiudi have no merits.

For the foregoing reasons, having considered the totality of the circumstances, there was probable cause for the issuance of the warrant and it is recommended that defendant's Motion To Suppress be DENIED.[6]

## CONCLUSION

In view of the foregoing, it is recommended that the Motion to Suppress be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

## REPORT AND RECOMMENDATION

## INTRODUCTION

On December 15, 2006, defendant Juan Carlos Pérez Velázquez (hereinafter "Pérez Velázquez") filed an "Omnibus Motion to Dismiss, or, alternatively to Suppress Evidence" (Docket No. 117). Defendant submits in the Omnibus Motion "whether the District Court is obligated to suppress the evidence seized from Mr. Pérez Velázquez' apartment, as a sanction for serious agent misconduct committed in this case by agents of the Caguas Drug Unit". (Docket No. 117 ¶ 3).

On January 16, 2007, the Court referred said motion to this Magistrate Judge (Docket No. 123). The government's reply was filed on January 19, 2007 (Docket No. 124).

Upon initial examination of the issues raised in the Omnibus Motion, this Magistrate Judge ordered the government to submit for *in-camera* inspection copy of the Grand Jury minutes which served as predicate for defendant Pérez Velázquez' new contentions to seek suppression and/or dismissal. *See* Docket Nos. 127, 133 and 135. The Court had pending, at the time, this Magistrate Judge's Report and Recommendation of August 21, 2006, as to this defendant's Motion to Suppress. (Docket No. 91).

On February 1, 2007, a Status Conference with the parties was been held before the presiding District Judge. On February 28, 2007, the Court issued an Order

---

where federal officials seek to capitalize on that abuse, this court might choose to exercise its supervisory powers by excluding ill-gotten evidence. This pronouncement is not ground-breaking; it merely traces the contours of a well-established power inherent in the federal courts. *See Elkins v. United States*, 364 U.S. 206, 216, 80 S.Ct. 1437, 1443–44, 4 L.Ed.2d 1669 (1960). It certainly does not delineate an exception to the general rule that federal law governs in federal prosecutions").

6. On a separate motion, although linked by reference to above Motion to Suppress as incorporated on page nine item five of the motion to suppress, is defendant Pérez Velázquez' Motion on Spoliation of Evidence, for the sole purpose of preserving his claim and the Government's Response (Docket Nos. 51, 61). Upon the government's reply that there was no video recorder attached to the video camera and monitor the defendant had trained on his vehicle parked in front of his apartment. This motion was not referred and no specific ruling is herein issue, except for being noted.

which referred to the Omnibus Motion pending before this Magistrate Judge (Docket No. 117) instructing us to resolve all issues therein, except whether the testimony of one Agent Meléndez should be suppressed. Other issues discussed in said order are to be entertained thereafter by the Court. (Docket No. 138).

The Omnibus Motion rests on issues similar to the ones already subject of the Report and Recommendation of the undersigned which is pending before the Court, except for the discussion that follows as to the dismissal requested of Count Six of the Indictment for facial insufficiency. Accordingly, we reiterate as follows:

## BACKGROUND

Defendant Pérez Velázquez stands charged, together with other co-defendants, in a conspiracy to possess with intent to distribute on September 8, 2005, over fifty (50) grams or more of cocaine base (Count One). Defendant Pérez Velázquez is also charged with possession with intent to distribute approximately three (3) kilograms of cocaine base (Count Two); possession with intent to distribute over fifty (50) grams or more of cocaine (Count Three); possession with intent to distribute a mixture or substance containing a detectable amount of heroin, approximately thirty five (35) grams of heroin (Count Four); possession of a firearm with obliterated serial number (Count Five); possession of firearm in relation to a drug trafficking crime, a violation of 18 U.S.C. § 924(c); and together with other defendants, aiding and abetting each other, possession with intent to distribute a detectable amount of cocaine base, approximately five hundred forty-five (545) grams of cocaine base (Count Seven).

Count Six of the Indictment charges co-defendant Pérez Velázquez that on or about September 8, 2005, he knowingly and intentionally possessed a firearm, one (1) Desert Eagle .357 caliber semi-automatic pistol and one (1) Glock–19 9mm semi-automatic pistol, during and in relation to a drug trafficking crime, as charged in Counts Two, Three and Four of the Indictment, a violation of Title 18, *United States Code*, Section 924(c)(1)(A).

The execution of the warrant which resulted in the seizure of the firearms at issue in Count Six was supported by an affidavit from Agent Wilfredo Figueroa Rivas, PRPD Caguas Drug Unit, as shown in the sworn statement by DEA Agent Héctor L. Cartagena which was attached to the federal complaint in this case. Thereafter, upon presenting the testimony of a law enforcement officer before a Grand Jury, the Indictment was returned charging above mentioned federal violations.

Co-defendant Pérez Vélazquez once more seeks to suppress evidence as to the offenses charged and the Court has deemed proper to give one more opportunity to defendant's counsel to argue as to suppression. Counsel also added arguments to obtain dismissal of Count Six based on facial insufficiency of the charges.

## LEGAL DISCUSSION

### A. *Franks* Hearing.

Defendant Pérez Velázquez submits he should be entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to suppress the evidence seized. This issue was already ruled upon in the pending Report and Recommendation, defendant submitted an appeal to the presiding District Judge, for which reason the granting of an evidentiary hearing would allow defendant to prove allegations of agent misconduct. Pursuant to the Order of the Court, this Magistrate Judge understands this issue is now before the presiding District Judge on

appeal of this Magistrate Judge's Report and Recommendation. Accordingly, the suppression of evidence as to the testimony and evidence obtained therein is thus deferred. (*See* Docket No. 138).

## B. Knock and Announce.

■ Defendant Pérez Velázquez also claims having grounds to suppress due to the law enforcement agents' failure to knock and announce before entering the apartment to execute the warrant. Once more geared on the lack of knock and announce, defendant submits the agents planted evidence in the toilet to support the excuse there was a need to avoid destruction of evidence and promptly entered the premises. As already discussed by this Magistrate Judge, even if the knock and announce rule was infringed, the result would be inconsequential since as recently as June of 2006, the Highest Court in *Hudson v. Michigan*, — U.S. ——, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) determined a violation of the knock and announce doctrine would not require suppression of evidence. Knock and announce is no longer necessary if it would be futile, represents a threat of physical violence or evidence would be destroyed. Thus, this Magistrate Judge reiterates the findings made in the prior Report and Recommendation regarding the issue once more raised by defendant as to knock and announce.

## C. Dismissal of Count Six of the Indictment.

Defendant Pérez Velázquez' Omnibus Motion includes grounds for dismissal of Count Six, a charged returned by a Grand Jury for violation to Title 18, *United States Code*, Section 924(c)(1)(A). (Docket No. 117, ¶¶ 12–30). Defendant submits that when the law enforcement agents entered the apartment, he, without being asked, directed the agents to the location of the firearms that were tucked away in a bedroom closet. There were no bullets in the apartment and he did not use the firearms to obstruct or threaten the officers' entrance into the apartment. These firearms were not located near the contraband which was in the kitchen and were not used to protect the contraband. In addition, defendant Pérez Velázquez submits the indictment should have stated in Count Six language in regard to the firearms being "in furtherance of the underlying crime".

In an attempt to establish the truthfulness of above averment as grounds for the requested dismissal of Count Six, defendant Pérez Velázquez requested discovery of Grand Jury minutes to verify whether the grand jurors had been presented a fabricated version of the location of the weapons and had been lied upon as to whether these firearms were loaded. Based on claims that the key state police officers may have lied, through the discovery of the Grand Jury minutes, defendant seeks an opportunity to demonstrate to the Court the indictment is in part, the result of perjury by state police agents.

Rule 6 of the Fed.R.Crim.P. provides insofar as grand jury transcripts that, except as provided in Rules 6, 12(I) and 26.2, and subdivision (a)(1)(A) of this rule, these rules [of discovery] do not relate to discovery or inspection of recorded proceedings of a grand jury. *See* Fed.R.Crim.P. 6(d) (listing few individuals who may be present at grand jury proceedings); Fed. R.Crim.P. 6(e)(2) (imposing general requirement of secrecy).

The Supreme Court has indicated access to grand jury documents may be obtained when the requesting party makes a showing of "particularized need." *See Pittsburgh Plate Glass Co. v. United States,*

360 U.S. 395, 400–401, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).

However, general courts have strictly adhered to the traditional policy of secrecy of grand jury proceedings and have generally refrained from exercising their discretion to permit disclosure of grand jury minutes to an accused unless there was a very clear and positive showing of a need for the minutes and such need appeared to be outweighing the countervailing policy of secrecy of grand jury proceedings. Ordinarily, an accused is not entitled to an inspection of grand jury minutes before trial for the general purpose of preparing for trial, but if the motion for inspection is not too broad, an accused charged with perjury before a federal grand jury is entitled, which is not the situation in the instant case, to inspect the grand jury minutes—at least of his own testimony. With respect to disclosure of grand jury minutes for the purpose of dismissing an indictment returned by the grand jury, Rule 6(e) of the Federal Rules of Criminal Procedure provides that the court may disclose the grand jury minutes "at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury," and the federal courts have generally recognized that an accused, upon making a proper showing, may be permitted to inspect the grand jury minutes for the purpose of making or supporting a motion to dismiss the indictment returned by the grand jury in the case. Decision whether to order disclosure of grand jury testimony is one committed to sound discretion of trial court, its decision resting on determination whether policies behind traditional veil of secrecy surrounding grand jury proceed-ings will be undermined by disclosure. *See* J.F. Ghent, *Accused's right to inspection of minutes of federal grand jury*, 3 A.L.R. Fed. 29 (1970).

The version of counsel for defendant Pérez–Velázquez, based on defendant's sworn statement of what might have transpired before the Grand Jury which returned the charge of firearms in relation to a drug trafficking crime, is but an attempt to obtain disclosure of such evidence on a generalized assumption that discovery of alleged perjury testimony was the basis of the charge returned in Count Six. (*See* undated Pérez Velázquez' Sworn Statement Under Penalty of Perjury, Exhibit 4). The remaining assumptions of defendant Pérez Velázquez' sworn statement are grounded on what neighbors or other persons have told him happened in the bedroom, bathroom, carport or vehicle, while defendant was detained and handcuffed on his living room sofa while his apartment was subject of a search during the execution of a warrant.[1]

The Supreme Court emphasized the long-established policy that maintained secrecy of grand jury proceedings in the federal courts. The Court held that the "indispensable" secrecy of grand jury proceedings could not be broken except where there was a "compelling necessity." The Supreme Court concluded that no compelling necessity was shown for the wholesale discovery and production of a grand jury transcript under Fed.R.Civ.P. 34. In this regard, the Highest Court held that parties seeking grand jury transcripts must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is

---

1. English translation of the documents attached to defendant Pérez Velázquez' Motion to Suppress and/or Dismiss were filed on the record on February 20, 2007, including the Sworn Statement above referred (Docket No. 137).

structured to cover only material so needed. *See United States v. Procter & Gamble Company*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *see also United States v. Baggot*, 463 U.S. 476, 480, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983) (holding that disclosure of grand jury materials to IRS to allow it to determine tax liability was not permitted under Rule 6(e)); *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 568, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983) (finding that disclosure of grand jury materials to state attorney general without court approval and showing of particularized need would not comport with Rule 6(e) requirements).

Sealed submissions sometimes have to occur in situations where the government seeks a ruling that certain information it is withholding should not be disclosed because, for example, it is claimed to be irrelevant or privileged or outside the scope of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Even then, the courts customarily insist on a particularized showing of substantial cause (e.g., state secret, danger to an ongoing investigation). *See United States v. Innamorati*, 996 F.2d 456, 487 (1st Cir. 1993) (citing cases). Nevertheless, the notion that the government can have a defendant's defense dismissed based on government evidence that the defendant is not allowed to see would go even further than the withholding of irrelevant or privileged information. *Jencks* material is disclosed routinely after a witness testifies; and grand jury testimony can be made available under Rule 6 based on all kinds of circumstances.

However, the idea that general safeguards against wide-ranging discovery like the Jencks Act and Rule 6 would be sufficient to justify a conviction on secret evidence was considered patently absurd in *United States v. Claudio*, 44 F.3d 10, 14 (1st Cir.1995). Thus, geared towards a concern that defendant Pérez Velázquez' arguments might have merit, the Grand Jury minutes as to the testimony therein presented was duly examined by this Magistrate Judge *in-camera* to find any evidence which would support defendant's position.

Still, the *in-camera* examination of the Grand Jury testimony in the instant case belies the theory submitted by defendant Pérez Velázquez to dismiss Count Six because of facial insufficiency predicated on the possibility that evidence before the Grand Jury defied the truth as to the location of the weapons which were seized inside the apartment and whether the testimony falsely indicated to the grand jurors these firearms were loaded. None of the concerns raised by defendant Pérez Velázquez in support of his motion were submitted to the grand jurors.

Defendant's own sworn statement admits there were drugs in the kitchen of his apartment. He just claims there were no drugs in his toilet which he attempted to dispose of nor inside his vehicle, which is a matter of credibility for a trier of fact. Defendant has further admitted the firearms, which he indicates were unloaded, were in his bedroom closet.[2] As to the

---

**2.** The government's opposition submits the Glock .9mm was loaded. It also indicates the search of defendant Pérez Velázquez' apartment resulted in the seizure of three hundred seventy (370) grams of cocaine base, one point ninety-four (1.94) kilograms of cocaine, forty-two point eighty-seven (42.87) grams of heroin, seven (7) cellular telephones, scale, baking soda, plastic baggies, tin foil roles, strainers, tupperware, impulse sealer, grater, six thousand two hundred seventy (6,270) Taj Mahal plastic vials, and twenty-one (21) baggies containing plastic vial caps in the kitchen, which is in close proximity to the one bedroom apartment of which defendant is the sole occupant.

facial insufficiency of Count Six, the evidence before the grand jurors does not serve to support defendant Pérez Velázquez' arguments of facial insufficiency for the firearms violations as being in relation to drug trafficking activity.

The cases dealing with weapons used in drug dealings regularly uphold "in furtherance" findings based on the weapon's capacity to counter resistance. *See United States v. Felton,* 417 F.3d 97 (1st Cir.2005); *see, e.g., United States v. Garner,* 338 F.3d 78, 81 (1st Cir.2003); *United States v. Luciano,* 329 F.3d 1, 6 & n. 9 (1st Cir.2003); *United States v. Timmons,* 283 F.3d 1246, 1253 (11th Cir.2002); *United States v. Mackey,* 265 F.3d 457, 462–63 (6th Cir.2001); *United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001); *United States v. Ceballos–Torres,* 218 F.3d 409, 412–15 (5th Cir.2000) (*holding* a conviction when a 9 mm Glock handgun was found together with 569.8 grams of cocaine and $1,360 in cash in defendant's bedroom). *See also United States v. Starks,* 145 Fed. Appx. 939, 941 (5th Cir.2005) (loaded .38 revolver and 200 grams of cocaine base were found in a locked bedroom to which defendant had a key) (unpublished opinion); *United States v. Coleman,* 145 Fed. Appx. 859, 860 (5th Cir.2005) (a firearm, drugs, and two magazines loaded with ammunition were found in defendant's dresser). And *see United States v. Grace,* 367 F.3d 29 (1st Cir.) (finding even though handgun was unloaded, that defendant possessed handgun to protect her drug supply and proceeds of her drug sales, as required for conviction for possessing firearm in furtherance of drug trafficking offense, was supported by sufficient evidence).

Similarly, the Court of Appeals for the First Circuit has also ruled there must be some sufficient nexus between the firearm and the drug trafficking offense and although a sufficient nexus is more readily found in cases where the firearm is in plain view and accessible to the defendant during a drug trafficking offense, *see Felton* 417 F.3d at 106 and *Garner,* 338 F.3d at 81, it has also found sufficient nexus to exist where the drugs and firearms were not jointly located and easily accessible. *See United States v. Cruz,* 352 F.3d 499, 509 (1st Cir.2003) (rifles located inside a nearby trash can and covered with blankets while drugs were located on defendant's person). In these cases, several factors are considered, including, whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances. *Id. See United States v. Robinson,* 473 F.3d 387, 399–400 (1st Cir.2007).

Upon a review of the Grand Jury minutes in this case, the grand jurors had the required quantum of evidence for a probable cause determination as to Count Six and none that would raise a concern for perjury or fabricated evidence.[3]

As such, defendant Pérez Velázquez' motion and his sworn statement do not refute evidence before the Grand Jury as being sufficient and having all necessary elements for probable cause as to an offense of firearms in relation to drug trafficking. Defendant's arguments that a petit jury would be materially mislead by Count Six and would convict him for possessing a gun simultaneous to the commission of a crime, without the government alleging that a specific gun had served to promote or advance the underlying drug offense in a specific manner, run contrary to above discussed case law. Accordingly,

---

**3.** Upon instructions by the Court, and within its time-frame discretion, defendant Pérez Velázquez will be entitled on due course to discovery of the testimony that was presented before the Grand Jury as Jencks' material.

**112**

defendant Pérez Velázquez should be required to verify, when evidence is presented to the trier of facts, if the government may sustain its burden regarding the offense in Count Six, which is not legally insufficient at this juncture.

### D. Other Issues.

Insofar as to item B, 4. Procedural posture of the criminal matter, item C, 5. Procedural remedy requested and D, 5–11, these arguments by counsel deal with issues as to alleged agents' misconduct which the Court has reserved for disposition. (*See* Docket No. 138).

### CONCLUSION

In view of the foregoing, it is recommended that the arguments herein discussed contained in defendant Pérez Velázquez' Omnibus Motion (Docket No. 117) be **DENIED.**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.[4]

---

4. It is also ordered to the Clerk's Office to provide to the presiding District Judge the sealed document filed by the government on February 2, 2007, containing the Grand Jury transcript herein discussed. (Docket No. 133).