# United States Court of Appeals
## For the First Circuit

No. 02-1418

UNITED STATES OF AMERICA,

Appellee,

v.

SHAWN L. GARNER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Circuit Judge,

and Bownes and R. Arnold,[*] Senior Circuit Judges.

Darla J. Mondou, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for the
United States.

August 4, 2003

---

[*]Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

R. **ARNOLD**, <u>**Senior Circuit Judge**</u>. Shawn Garner was found guilty by a jury of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). He was sentenced to 270 months' imprisonment (22 years and six months) and five years of supervised release.

On appeal, two principal issues are raised, together with some subsidiary questions, which we shall address in due course. First, the defendant argues that his motion to suppress evidence was incorrectly denied. This motion concerns evidence seized during a warrantless search of the apartment in which he was living. The District Court found that officers were given consent to enter the apartment, and that the evidence seized then appeared in plain view. Mr. Garner also argues that his conviction for possessing a firearm in furtherance of a drug-trafficking crime is not supported by sufficient evidence. As to both points, we disagree with the defendant and therefore affirm. The District Court's findings of fact with respect to the motion to suppress were not clearly erroneous, nor was any error of law committed. As to the firearm-possession offense, the evidence was clearly sufficient.

-2-

On July 27, 2000, a reliable confidential informant provided information to Officer Linskey of the Boston police that Mr. Garner was engaged in selling crack cocaine out of an apartment in Dorchester where he lived with his girlfriend and her child. The informant also said that his associates had seen a small boy (Mr. Garner's son) who lived in that apartment bring two firearms outside, where he and another little boy played with them until an adult took them away. This informant had provided reliable information in support of search warrants previously. The following day, Officer Linskey, along with a detective and two other officers, went to Mr. Garner's apartment in order (they said) to seize firearms if found in the apartment. When they arrived, they found the front door ajar one or two inches and loud music coming from the apartment. Officer Linskey asked Mr. Garner to turn down the music and then asked if he and his officers could "step in," and Mr. Garner replied "okay."

After the police entered the apartment, Ms. Sabater, Mr. Garner's girlfriend, who also lived in the apartment, agreed to step into a bedroom to answer questions from Officer Linskey out of the presence of Mr. Garner. The police therefore had the consent of Mr. Garner and Ms. Sabater both to enter the apartment and to enter the bedroom, where drugs were quickly spotted. Officer Linskey did not search, or request to search, the apartment or the

bedroom, but while questioning Ms. Sabater he saw, in plain view, six bags of crack cocaine, when she knocked away a bottle of nail polish remover.

## II.

In reviewing the denial of the motion to suppress, we have in mind the standard of review: "We scrutinize the court's factual findings, including credibility determinations, for clear error, and will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it." United States v. Mendez-de Jesus, 85 F.3d 1, 2 (1st Cir. 1996) (citations omitted).

The defendant first asserts that the true motive of the police in seeking to enter the apartment was to search for illegal drugs, not firearms, and that his consent was thus somehow obtained under false pretenses. But "[w]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (internal quotations and citation omitted); United States v. Weems, 322 F.3d 18, 23 (1st Cir. 2003) (rejecting defendant's argument that officers used outstanding arrest warrant as a pretext to search his house without a warrant). See Whren v. United States, 517 U.S. 806, 813 (1996) (stating that "[s]ubjective

intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

Here, the officers had defendant's permission to enter the apartment, and his girlfriend's permission to enter the bedroom. They had a legal right to be present at the location. It follows that they had the authority, without a warrant, to seize any obviously illegal material in plain view. The finding that the six bags of crack cocaine were in plain view is not clearly erroneous. They became obvious to Officer Linskey when Ms. Sabater accidentally knocked over a bottle of nail polish remover supporting a picture frame which had partly hidden the drugs. See United States v. Owens, 167 F.3d 739, 746 (1st Cir. 1999). Later, a search warrant was obtained, based partly upon the discovery of the drugs. There was nothing legally untoward about the issuance of the warrant.

Mr. Garner argues that the drugs and gun found in the second search should also be suppressed because the search warrant did not specifically allow for search of the basement area, where the evidence was found. We observe that Mr. Garner would, in any event, have had no authority to refuse consent to a search of the basement, since it was a common area of the apartment building in which he had no privacy interest. Minnesota v. Carter, 525 U.S. 83, 88 (1998); United States v. Hawkins, 139 F.3d 29, 32 (1st Cir. 1998) ("a tenant lacks a reasonable expectation of privacy in the

common areas of an apartment building"). Without a privacy interest in the common areas of the apartment building, Mr. Garner has no standing to challenge the search and seizure of the drugs and firearm found in a hole in the basement wall.

Mr. Garner alleges that his Fifth Amendment privilege against self-incrimination was violated because a statement he gave to Officer Linskey at the police station was given without his having received Miranda warnings. This argument is raised here for the first time and is therefore reviewable only for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993).

The argument strains credulity. Officer Linskey gave Mr. Garner his Miranda warnings at a little before three in the afternoon at the apartment. Within twenty minutes, the officer questioned Mr. Garner again at the police station. Despite Mr. Garner's contention that new Miranda warnings were required because his statements at the apartment were exculpatory and those at the police station were inculpatory, the time between questionings by the police was de minimis. Further, Miranda states that "no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' " Miranda v. Arizona, 384 U.S. 436, 477 (1966). There was therefore no violation of Mr. Garner's Fifth Amendment right against self-incrimination. For these reasons we affirm the District Court's

denial of Mr. Garner's motion to suppress statements he made to the police.

III.

As of November 1998, under 18 U.S.C. § 924(c)(1)(A) "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime" be given an additional mandatory sentence depending on the exact nature of the offense. Appellant argues that the evidence — the gun found with drugs in a hole in the basement wall — proved at most his possession of a gun, not that the gun was possessed "in furtherance of" a drug trafficking crime. The meaning of the adverbial phrase "in furtherance of," modifying "possesses" in the statute, has recently been explained by this Court in a factually similar case. United States v. Luciano, 329 F.3d 1, 4 (1st Cir. 2003). As here, a stash of drugs was found in a residence, concealed, along with a firearm. The defendant argued that there was "no 'nexus' between the firearms and the drug selling operation." Id. at 5. Without such a nexus, he could not be convicted under § 924(c).

As this Court pointed out, this argument ignores the legislative history behind the 1998 amendment of § 924(c)(1), which introduced new, broader language, targeting not just those who use

or carry firearms during drug transactions, but also those who "possess" firearms "in furtherance of" a drug-trafficking crime. This Court concluded: "Given the close proximity of the firearms and loaded magazines to the significant stockpile of heroin, we have no difficulty concluding that there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under § 924." Id. at 6. Here, the gun found with drugs was kept readily accessible. When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed "in furtherance of" an ongoing drug-trafficking crime. We therefore affirm the denial of the motion to acquit due to insufficient evidence on the gun-possession charge, since the jury had ample evidence to find Mr. Garner guilty on this charge as well.

Affirmed.